**In re Scott J. RAFFERTY.**

No. 88–5115.

United States Court of Appeals,
District of Columbia Circuit.

Argued May 12, 1988.
Decided Dec. 7, 1988.

Scott J. Rafferty, pro se.

Guy Miller Struve, with whom Scott W. Muller was on the brief, for respondents.

Before MIKVA and SILBERMAN, Circuit Judges, and PARKER, Senior District Judge, United States District Court for the District of Columbia.

MIKVA, Circuit Judge:

Petitioner challenges a district court ruling that placed under a protective order certain information in petitioner's possession that petitioner had obtained before litigation and discovery began. The district court order prevented petitioner from disclosing the information to third persons, including the Department of Justice. We find the district court's decision appealable as a collateral order under *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 546, 69 S.Ct. 1221, 1225, 93 L.Ed. 1528 (1949), and we vacate the order.

## I. BACKGROUND

On May 6, 1986, petitioner Scott J. Rafferty was hired by Telco Research Corporation, a wholly owned subsidiary of NYNEX Corporation. NYNEX is one of the Bell Operating Companies ("BOCs") created by the break-up of the American Telephone & Telegraph Company ("AT & T"). Mr. Rafferty was a senior vice president in charge of Telco's consulting division. The AT & T consent decree prevented BOCs from engaging in any business other than local phone service without first obtaining a waiver from Judge Harold H. Greene. *See United States v. American Telephone & Telegraph Co.*, 552 F.Supp. 131, 226–34 (D.D.C.1982), *aff'd*, 460 U.S. 1001, 103 S.Ct. 1240, 75 L.Ed.2d 472 (1983). Since Mr. Rafferty was unsure whether NYNEX had the authority to operate a consulting business, he requested a legal opinion from NYNEX's attorneys; two weeks later, on November 10, 1986, NYNEX fired him. NYNEX asserts that it also terminated the consulting business at this time.

The episode sparked an investigation of NYNEX by the Department of Justice, with which Mr. Rafferty cooperated. Mr.

Rafferty also filed an action against NYNEX alleging misrepresentation, breach of contract, unlawful discharge, and antitrust violations. The case was assigned to Judge Greene because Mr. Rafferty and his counsel designated the case as "related" to *AT & T.* The district court originally directed that discovery in the lawsuit terminate in November 1987, but that date was later extended at Mr. Rafferty's request until January 1, 1988.

On January 29, 1988, NYNEX and Telco filed a motion for summary judgment seeking dismissal of the entire action. Mr. Rafferty's own opposition to this motion included an affidavit in which he asserted that he had received four floppy disks of information "hacked" from Telco's computers indicating that NYNEX possessed documents that were responsive to his discovery requests but that had not been produced. This, Mr. Rafferty maintained, was yet another reason to deny NYNEX's motion. The disks also allegedly contain information revealing violations by NYNEX of the antitrust consent decree. On March 1, NYNEX filed what it styled an "Emergency Motion for Hearing and Return of Property," seeking the return of the floppy disks and all information obtained from them. Six days later, the magistrate supervising discovery, Patrick J. Attridge, granted this motion, ordering Mr. Rafferty to turn over the disks to NYNEX. At this point Mr. Rafferty had not had a chance to respond to NYNEX's motion. The magistrate then scheduled a hearing on the matter. Meanwhile, Mr. Rafferty complied with the order.

At the hearing, the parties disputed whether Mr. Rafferty had obtained the floppy disks legally. Mr. Rafferty maintained that the day after he was dismissed from Telco, he requested copies of his electronic mail messages from a Telco manager, who made the floppy disk copies for him. As it turned out, the information transferred to the four floppy disks included some messages that were not Mr. Rafferty's. NYNEX asserted that Mr. Rafferty had gained possession of the disks in an unauthorized fashion by persuading a Telco computer room employee named Hollis to make the copies for him. Both parties agreed, however, that Mr. Rafferty obtained the disks the day after his employment was terminated. Mr. Rafferty also disclosed during the course of the hearing that some of the material on the floppy disks was contained in the memory of his personal computer, which he had purchased from Telco at the time of his departure.

The magistrate declined to resolve Mr. Rafferty's right to possess either the disks or the information within his personal computer. In an order dated March 11, 1988, however, the magistrate sought to resolve the use of the disks and memory information during the litigation. The order permitted NYNEX to retain the originals of the floppy disks but required the return of copies of the disks to Mr. Rafferty. The magistrate then placed, for the duration of the litigation, all information contained on the disks, and all information relating to NYNEX and Telco in the personal computer memory, under the protective order to which the parties had already agreed pursuant to Fed.R.Civ.P. 26(c). After Mr. Rafferty's case against NYNEX and Telco was completed, the magistrate ruled, Mr. Rafferty could apply to Judge Greene for a determination whether the disks and computer memory data could be released. This meant that in the interim Mr. Rafferty could use the information only in connection with the pending litigation; he could not disclose it to third parties such as the Department of Justice.

In a memorandum opinion dated March 31, 1988, and filed April 5, 1988, Judge Greene affirmed the magistrate's order and denied Mr. Rafferty's motion for reconsideration. Judge Greene found:

> This Order was entered after a hearing at which plaintiff was present and allowed to state his position. Because the items under discussion related to discovery in this case, consideration of this issue was well within the Magistrate's delegated jurisdiction. This Court will not, without good cause, overturn a decision taken after proper evaluation of the parties' respective positions. No such

reason appears here. Therefore, [Mr. Rafferty's] motion will be denied.

Memorandum opinion at 4. Judge Greene's March 31 ruling also denied a motion by Mr. Rafferty's counsel to withdraw and a related motion by Mr. Rafferty to appear *pro se*. Later, however, in a memorandum and order dated October 24, 1988 and filed October 25, 1988, Judge Greene granted the motion of counsel to withdraw and permitted the appearance of Mr. Rafferty *pro se*.

Also on March 31, 1988, Mr. Rafferty filed a motion to enforce the AT & T antitrust decree, based on language in an order entered in *United States v. Western Electric Co.*, 578 F.Supp. 677, 679 (D.D.C.1983), providing that "[a]n interested third party, whether or not it has heretofore been granted intervenor status * * * may apply to the Court for appropriate action" after serving a request for enforcement upon the Department of Justice. The motion was returned to Mr. Rafferty by the Clerk of the district court. On April 29, 1988, Judge Greene notified this court that Mr. Rafferty's motion had been rejected because of a clerical error and that the district court had granted leave to Mr. Rafferty to file his motion.

On April 22, 1988, Mr. Rafferty filed a petition for mandamus with this court, seeking a writ that would direct Judge Greene to: (1) grant the motion of Mr. Rafferty's attorney to withdraw; (2) permit Mr. Rafferty to appear *pro se;* (3) vacate the magistrate's order of March 11, 1988, which placed the floppy disks and information contained in the personal computer memory under the protective order; (4) grant a hearing to determine whether case should be transferred to another judge in the district court; and (5) accept for filing the motion to enforce the AT & T consent decree.

## II. Discussion

We treat the first, second, and fifth requests as moot because the requested relief has already been granted by the district court. See *County of Los Angeles v. Davis*, 440 U.S. 625, 631, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642 (1979); *Friends of Keeseville, Inc. v. FERC*, 859 F.2d 230, 232–33 (D.C.Cir.1988). Because the matter remains before the district court, any concerns Mr. Rafferty has regarding the continued effect of discovery agreements entered into by his counsel are appropriately raised in the district court rather than here. We also find it unnecessary to consider Mr. Rafferty's motion to transfer. Because the district court has permitted Mr. Rafferty to appear *pro se*, he can now properly submit a motion to transfer to the district court. At this time, there is no indication in the record that Judge Greene has conducted this case in such a way as would warrant the remedy or transfer. With respect to the third requested form of relief, we vacate the magistrate's orders of March 7 and March 11, 1988, as well as that portion of Judge Greene's memorandum opinion of March 31 that affirmed them.

### A.

■ We pause at the outset to note that the decision placing the disks and information under the protective order, and thereby prohibiting Mr. Rafferty from transferring them to third parties, is reviewable under the collateral order exception to the final judgment rule embodied in 28 U.S.C. § 1291. As the Supreme Court found in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 546, 69 S.Ct. 1221, 1225, 93 L.Ed. 1528 (1949):

> This decision appears to fall in that small class which finally determine claims of right separate from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the· cause itself to require that appellate consideration be deferred until the whole case is adjudicated. The Court has long given this provision of the statute this practical rather than a technical construction.

*See also Richardson–Merrell, Inc. v. Koller*, 472 U.S. 424, 429–32, 105 S.Ct. 2757, 2760–62, 86 L.Ed.2d 340 (1985); *Flanagan v. United States*, 465 U.S. 259, 265, 104 S.Ct. 1051, 1054–55, 79 L.Ed.2d 288 (1984).

The district court's decision meets this test. First, it "conclusively determine[s] the disputed question," *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468, 98 S.Ct. 2454, 2458, 57 L.Ed.2d 351 (1978). As a result of the order in question, Mr. Rafferty cannot disclose the information to third persons during the potentially quite lengthy litigation with NYNEX, and he can disclose it thereafter only after first applying to the district court. Second, it is "an important question completely separate from the merits of the action," 437 U.S. at 468, 98 S.Ct. at 2458. *See also Mitchell v. Forsyth*, 472 U.S. 511, 527, 105 S.Ct. 2806, 2816, 86 L.Ed.2d 411 (1985) (noting that collateral order must be "conceptually distinct" from the merits of the litigation). The order reviewed today is entirely independent of the underlying wrongful discharge claim. Whether Mr. Rafferty can disclose the information depends on how he obtained it, what its contents are, and what his legal rights of disclosure are. These questions are not intertwined in the slightest with Mr. Rafferty's complaint that he was terminated as a "whistleblower" for exposing NYNEX's possible antitrust violations. *Cf. Green v. Department of Commerce*, 618 F.2d 836, 840 (D.C.Cir.1980); *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1117 (3d Cir.1986), *cert. denied,* —— U.S. ——, 108 S.Ct. 487, 98 L.Ed.2d 485 (1987).

Finally, Mr. Rafferty's claim today would "be effectively unreviewable on appeal from a final judgment." *Coopers & Lybrand*, 437 U.S. at 468, 98 S.Ct. at 2458. The disclosure issue is so far removed from the merits of the underlying case that it is difficult to imagine how Mr. Rafferty could even raise the issue on appeal. Even if he could, the public interest in the prompt disclosure of information, as illustrated by the prior restraint doctrine of first amendment law, means that a slow, tortuous appeal, filed after a long, time-consuming trial, is not an effective remedy in this case. *See, e.g., Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70, 83 S.Ct. 631, 639, 9 L.Ed.2d 584 (1963) (noting that a prior restraint is invalid unless it "assure[s] an almost immediate judicial determination of the validity of the restraint") (footnote omitted).

Although discovery orders, being interlocutory, are not normally appealable, pragmatic concerns have led us in the past to find similar lower court orders appealable, *see, e.g., Tavoulareas v. Washington Post Co.*, 724 F.2d 1010, 1012 (D.C.Cir.) (permitting appeal challenging district court order that partially removed protective order), *vacated on other grounds*, 737 F.2d 1170 (D.C.Cir.1984) *(en banc)*. Our sister circuits have also noted that discovery orders meeting the *Cohen* criteria are appealable as collateral orders. *See, e.g., Southern Methodist University Association of Women Law Students v. Wynne & Jaffe*, 599 F.2d 707, 711–12 (5th Cir.1979) (permitting, under *Cohen*, appeal of discovery order requiring disclosure of identities of anonymous lawyers and members of association who alleged that law firm hiring practices were discriminatory and who feared retaliation if their names were released).

The case before us is an even more compelling one, because what is really under challenge today is not a discovery order at all, but rather an order preventing the disclosure of materials obtained *outside* the discovery process. Mr. Rafferty, like the newspaper that seeks access to sealed documents in a judicial proceeding, wishes to disseminate information under a protective order to the public. Although there are concededly great differences between that case and this one, the separability of the issue of disclosure from the underlying merits of the litigation and the ineffectiveness of appeal as a remedy are the same in both cases. It would certainly be anomalous if a litigant in Mr. Rafferty's shoes who wished to distribute information to the government or to the media could not appeal an order forbidding him from doing so, while the newspaper to whom he wished to give his story were able to appeal. *See In re Reporters Committee for Freedom of the Press*, 773 F.2d 1325, 1330 (D.C.Cir. 1985) (permitting appeal, under *Cohen*, by the press of an order that sealed documents in a civil trial following a pretrial protective order).

We therefore find that the district court's decision affirming the magistrate's orders is appealable.

## B.

■ Having found that the district court's decision is appealable, we reach the substance of Mr. Rafferty's claim. It is clear to us that the magistrate exceeded his jurisdiction by issuing the orders in this case and that the district court erred in affirming them. *See* 28 U.S.C. § 636(b)(1)(A) (magistrate's order may be reconsidered if "clearly erroneous or contrary to law"). By all accounts, Mr. Rafferty possessed the items in question before litigation began; he did not obtain them through a discovery request.

In *Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984), the Supreme Court held that a protective order entered after a showing of good cause did not offend the first amendment, because the party "gained the information [it] wish[ed] to disseminate only by virtue of the trial court's discovery processes." 467 U.S. at 32, 104 S.Ct. at 2207. The Court emphasized that a "party may disseminate the identical information covered by the protective order as long as the information is gained through means independent of the court's processes," 467 U.S. at 34, 104 S.Ct. at 2208, and upheld the order at issue in that case in part because it did "not restrict the dissemination of the information if gained from other sources." 467 U.S. at 37, 104 S.Ct. at 2209. *See also The Courier–Journal v. Marshall,* 828 F.2d 361, 364 (6th Cir.1987) (upholding protective order that "limit[ed] access only to specified fruits of discovery"); *Anderson v. Cryovac, Inc.,* 805 F.2d 1, 14 (1st Cir. 1986) (holding that a protective order must not "restrict the dissemination of information obtained from other sources").

We do not question the power of the district court to regulate discovery or the manner in which materials may be used in a litigation pending before it. But the magistrate's orders had the effect of preventing petitioner from disclosing the information in question, which petitioner had obtained before the litigation began, to any person other than the parties to this case and their counsel. The March 7 order also required Mr. Rafferty to return the disks to NYNEX. The magistrate thereby exceeded his delegated powers, which were limited to supervising the discovery process. The district court erred when it found that "the items under discussion related to discovery in this case." They did not.

NYNEX and Telco argue that Mr. Rafferty must be prevented from disclosing the information in question to third parties because he obtained it improperly. Mr. Rafferty contends that by using the word "hacked," he did not mean to imply that the disks were stolen, or that he was anything but an innocent recipient of them. We find it unnecessary to resolve this factual dispute, or to reach the question whether Mr. Rafferty would be entitled to distribute the information even if he had obtained it without authorization. *Cf. Landmark Communications v. Virginia,* 435 U.S. 829, 843–44, 98 S.Ct. 1535, 1543–44, 56 L.Ed.2d 1 (1978); *Rodgers v. United States Steel Corp.,* 536 F.2d 1001, 1008 n. 16 (3d Cir.1976) (citing *New York Times Co. v. United States,* 403 U.S. 713, 91 S.Ct. 2140, 29 L.Ed.2d 822 (1971)); L. Tribe, *American Constitutional Law* § 12–21, at 966 n. 6 (2d ed. 1988). NYNEX and Telco are free to seek any legal or equitable relief available to them to remedy the allegedly improper obtaining and usage of the disks and information in the computer memory and to prevent Mr. Rafferty from disseminating them. What NYNEX and Telco may not do, however, is use the happenstance of a discovery proceeding to place under a protective order materials not obtained through discovery. We intimate no views on the questions of disk ownership and Mr. Rafferty's right to distribute the disks and information; we hold only that on the facts before us, the protective order was not a proper remedy.

## III. Conclusion

The magistrate's orders of March 7 and 11, 1988, are vacated, as is that portion of

the district court's memorandum opinion of March 31 affirming them. The case is remanded for proceedings not inconsistent with this opinion.

IT IS SO ORDERED.