### In re GRAND JURY PROCEEDINGS.

#### No. MC–3–97–62.

United States District Court,
S.D. Ohio,
Western Division.

July 28, 2000.

---

58

Greg Lockhart, Dayton, OH, for Plaintiff.

John Rieser, Dayton, OH, Paul Shaneyfelt, Troy, OH, for Defendant.

ENTRY SETTING FORTH COURT'S OBSERVATIONS AND DIRECTING PROCEDURES REGARDING MOTION FOR RETURN OF DOCUMENTS (DOC. # 2) FILED BY BANKRUPTCY TRUSTEE; CONFERENCE CALL SET; ENTRY REACTIVATING CAPTIONED CAUSE ON DOCKET

RICE, Chief Judge.

This matter comes before the Court upon a Motion for the Return of Documents (Doc. # 2) filed by Ruth A. Slone–Stiver,[1] who serves as the bankruptcy trustee for an entity known as the Tower Metal Alloy Company ("Tower Metal"). In her capacity as trustee, Slone–Stiver has commenced litigation against at least two other entities: (1) the Northeast Alloys & Metals Division ("NE Alloys"), a division of ELG Haniel Trading Corporation, in case number C–3–95–269; and (2) Steelmet, Inc. ("Steelmet"), in case number C–3–95–141. In those cases, Slone–Stiver seeks recovery for fraudulent transfers and conveyances from the debtor, Tower Metal, to NE Alloys and Steelmet. In short, Slone–Stiver alleges that two individuals, Leslie Broock and Mark Kossoff, "looted" Tower Metal by selling its inventory to Steel-

met and other companies through a shell entity known as Ohio Silver Reclaiming.

As a result of their actions, it is undisputed that Broock and Kossoff became the subject of a federal grand jury investigation. On October 20, 1992, search warrants were executed at various locations, including the offices of Tower Metal, the offices of Harris Harbor, another scrap metal dealer, and the homes of Leslie Broock, Mark Kossoff and Ben Broock, who is Leslie Broock's father. As a result of those searches, state and/or federal authorities seized numerous business records and other property. In her pending Motion for the Return of Documents (Doc. # 2), Slone–Stiver admits that some of those records have been released to her. She contends that others were retained as evidence in the grand jury's investigation of Leslie Broock and Mark Kossoff. (*Id.* at 5). That investigation ultimately led to the entry of guilty pleas by both individuals to one count of conspiracy to commit bankruptcy fraud in *United States v. Mark Kossoff*, CR–3–97–73, and *United States v. Leslie Broock*, CR–3–98–85. In order to pursue recovery on behalf of Tower Metal in the bankruptcy proceedings, Slone–Stiver contends that she needs to obtain certain other documents and records that were presented to the grand jury. Specifically, she seeks four types of materials: (1) all documents that were prepared before the empaneling of the grand jury and that were seized pursuant to the aforementioned search warrants; (2) all documents obtained by the grand jury through its subpoena power; (3) all "public records or documents" in the possession of the grand jury; and (4) all documents that were voluntarily provided to the grand jury.[2] (Doc. # 2 at 1).

---

1. The complete caption of Slone–Stiver's Motion reads, "Motion of Ruth A. Slone–Stiver, Trustee in Bankruptcy, Tower Metal Alloy Company, for the Return of Documents, Prepared Before the Grand Jury was Empaneled, and Seized Pursuant to the October 20, 1992[,] Search Warrants, for the Turnover of any Documents Obtained by the Grand Jury Pursuant to the Grand Jury's Subpoena Power, and for the Turnover of any Records Possessed by the Grand Jury that are Public Records or any Documents that were Produced Voluntarily to the Grand Jury." Hereinafter, the Court will refer to this Motion as the "Motion for the Return of Documents."

2. Slone–Stiver brings her Motion pursuant to Fed.R.Crim.P. 6(e)(3)(D), which provides, in relevant part:

(D) A petition for disclosure [of matters occurring before the grand jury] shall be filed in the district where the grand jury convened. Unless the hearing is ex parte, which it may be when the petitioner is the government, the petitioner shall serve written notice of the petition upon (i) the attorney for the government, (ii) the parties to the judicial proceeding if disclosure is sought in connection with such a proceeding, and (iii) such other persons as the

Given that the criminal proceedings against Broock and Kossoff have concluded, the United States indicates that it "has no general objection to the release of the grand jury materials, assuming the Court is satisfied that the Trustee has met her burden under the law permitting such disclosure." (Doc. # 15 at 10).[3] In addition, NE Alloys and Steelmet have filed a joint Memorandum in which they "take no position on whether the Court should grant the Trustee's turnover motion." (Doc. # 16). However, they do seek direct and equal access to any grand jury materials that the Court might order released to Slone–Stiver.[4] (Id.). Although Slone–Stiver has not responded to the foregoing request,[5] she has filed an additional Memorandum, reiterating her desire to obtain the previously specified "grand jury documents." (Doc. # 17). In her Memorandum, Slone–Stiver also notes that she possesses certain securities issued to Sophia Kossoff, who is Mark Kossoff's now-deceased mother. Slone–Stiver states that the securities were seized from Mark Kossoff's home, during the execution of the aforementioned search warrants, and trans-

ferred to her by the Clark County (Ohio) Prosecutor's Office. (Id. at 5). In addition, Slone–Stiver states that she has possession of "records that Mr. Kossoff may claim are personal records." (Id. at 5–6). She purportedly received those records from the Clark County Prosecutor's Office as well. (Id.).

Although Slone–Stiver's pending Motion for the Return of Documents is unopposed by NE Alloys, Steelmet and the United States, resolution of said Motion is complicated somewhat by Mark Kossoff's filing of a Motion for the Return of Property, pursuant to Fed.R.Crim.P. 41(e), in his related criminal case.[6] See Doc. # 13 in United States v. Kossoff, CR–3–97–73. Kossoff's Memorandum in support of his Rule 41(e) Motion also has been filed herein as a Memorandum in opposition to Slone–Stiver's Motion for the Return of Documents. (Doc. # 21). In that pleading, Kossoff primarily argues that he is entitled to the return of certain personal property that was seized from his home pursuant to an October 20, 1992, search warrant issued by the Clark County Court of Common Pleas.[7] The items at issue allegedly

court may direct. The court shall afford those persons a reasonable opportunity to appear and be heard.

The foregoing procedure represents one of the few exceptions to the general rule that all actions must be commenced by the filing of a complaint. *Boyd v. United States Dept. of Justice*, 673 F.Supp. 660, 662 n. 2 (E.D.N.Y.1987).

3. In its Memorandum, the Government recites the standards for obtaining disclosure of grand jury materials and makes no argument that Slone–Stiver has not met those standards. (Doc. # 15 at 2–9).

4. In support of their request, NE Alloys and Steelmet reason:

... The Trustee can be expected to propose that, following review of the U.S. Attorney's documents by her counsel, Steelmet and NE Alloys can obtain relevant documents through requests for production served on the Trustee. Any such duplicative and cumbersome procedure would violate due process because the Trustee has no incentive or ethical obligation to identify and copy documents that are exculpatory or otherwise helpful to Steelmet or NE Alloys. For this reason alone, the Court should permit Steelmet and NE Alloys to have access that is equal in every respect to the Trustee's access to any documents produced as a result of her motion for turnover of grand jury materials.

(Doc. # 16 at 3).

5. Slone–Stiver likely did not respond to the request for equal access because NE Alloys and Steelmet filed their Memorandum on July 6, 1999, the same day that Slone–Stiver filed her additional Memorandum.

6. In relevant part, Fed.R.Crim.P. 41(e) provides:

(e) **Motion for Return of Property.** A person aggrieved by an unlawful search and seizure or by the deprivation of property may move the district court for the district in which the property was seized for the return of the property on the ground that such person is entitled to lawful possession of the property. The court shall receive evidence on any issue of fact necessary to the decision of the motion. If the motion is granted, the property shall be returned to the movant, although reasonable conditions may be imposed to protect access and use of the property in subsequent proceedings. . . .

When the owner of seized property invokes Rule 41(e) after the completion of criminal proceedings against him, courts are to treat his request as a civil action. *See United States v. Duncan*, 918 F.2d 647, 654 (6th Cir.1990).

7. It appears that the October 20, 1992, warrant executed at Kossoff's residence was one of five

include currency and coins, gold and silver ingots, checks, a Rolex watch, a diamond ring, savings bonds, assorted stocks and insurance policies, safe-deposit box keys, bank books and statements, a ledger, assorted financial records and two car titles. (Doc. # 21 at 4). Kossoff contends that Slone–Stiver and his former counsel, Richard Mayhall, jointly obtained custody of the foregoing items from the Clark County Prosecutor's Office on March 26, 1993. (*Id.*). According to Kossoff, those items have not yet been returned to him, despite his filing of motions to that effect in the Clark County Court of Common Pleas and the Clark County Probate Court.[8] (*Id.* at 4–5).

With respect to the grand jury documents sought by Slone–Stiver in her present Motion, Kossoff asserts the following brief argument:

> On October 20, 1992, law enforcement officials executed at least five Search Warrants for the Kossoff residence, the Broock residence, two locations where Tower Metal Alloy conducted business, and a third party that conducted business with Tower Metal Alloy. A number of business records, financial documents, and personal property were seized pursuant to these warrants. It may be difficult, if not impossible, to determine the source of each document or record currently in the possession of either the bankruptcy trustee or the United States attorney. The trustee's request for the Grand Jury material seems to be couched in terms of a more expensive, burdensome, or time consuming presentation of a civil case without the material. This does not amount to a particularized need or an inability to present important relevant material to the trier of fact absent access to the Grand Jury

materials. *In re Corrugated Container Antitrust Litigation,* 1981 WL 2136, *2 (S.D.Texas 1981).

(Doc. # 21 at 6). In the event that the Court finds Kossoff's argument to be unpersuasive, he alternatively requests that he and his wife receive "equal access" to inspect any grand jury documents and records that are transferred to Slone–Stiver. (*Id.* at 6–7).

Finally, Kossoff suggests that his Motion for the Return of Property and Slone–Stiver's present Motion for the Return of Documents raise three questions for this Court to resolve:

> 1) Why does the bankruptcy trustee continue to hold onto property which does not belong to her, specifically, the stock certificates of Sophia Kossoff? What possible legal claim does she have?
>
> 2) Where is the remaining property contained on the March 23, 1993[,] list? Why has the other personal property belonging to the Kossoffs not been returned to them?
>
> 3) Should this Court disclose the Grand Jury material sought by the bankruptcy trustee?

(*Id.* at 6).

### I. *Analysis of Pending Motion for Return of Documents (Doc. # 2) filed by Bankruptcy Trustee*

Before turning to the merits of Slone–Stiver's pending Motion for the Return of Documents (Doc. # 2), the Court pauses briefly to note that said Motion implicates only the last of the foregoing questions posed by Kossoff. In order to resolve Slone–Stiver's request for certain grand jury documents and records, the Court need not determine why she continues to hold the stock

---

8. warrants executed that day. According to Kossoff, the warrant executed at his residence was issued by the Clark County Court of Common Pleas. He contends that several agencies were involved in the search of his home, and the other locations, including the Springfield Police Department, the Clark County Sheriff's Office, the Ohio Bureau of Criminal Investigation and Identification and the Federal Bureau of Investigation. (Doc. # 21 at 2). It is not clear from the record whether the other warrants also were issued by the Clark County Court of Common Pleas.

8. As noted, *supra,* Slone–Stiver admits that she possesses the stock certificates registered in the name of Sophia Kossoff. (Doc. # 17 at 5–6). To the best of her knowledge, however, she denies possessing any of the other personal property sought by Mark Kossoff in his Motion for the Return of Property. (*Id.* at 5). She asserts that this "other property was apparently turned over to Richard Mayhall for Mr. Kossoff's benefit." (*Id.*).

certificates registered to Sophia Kossoff. Likewise, resolution of her pending Motion does not require the Court to determine: (1) the location of the money, jewelry, ingots and other property sought by Kossoff; or (2) why those items have not been returned to him.[9] Such issues may be critical to the resolution of Kossoff's Rule 41(e) Motion for the Return of Property in the related criminal case. For purposes of Slone–Stiver's pending Motion, however, the relevant issues are: (1) whether the Court should order the release of the grand jury documents and records to her; and (2) whether NE Alloys, Steelmet and the Kossoffs should be given direct and equal access to those materials, if they are released. Having identified the issues raised by Slone–Stiver's pending Motion, the Court turns now to the merits of her request for the grand jury materials.

As a means of analysis, the Court first will determine whether Slone–Stiver has satisfied the legal requirements for obtaining evidence presented to a grand jury. Slone–Stiver brings her Motion under Fed.R.Crim.P. 6(e), which prohibits the disclosure of "matters occurring before the grand jury, except as provided for in these rules." *See* Fed. R.Crim.P. 6(e)(2). In turn, Rule 6(e)(3)(C) sets forth an exception to the prohibition against such disclosure. In relevant part, Rule 6(e)(3)(C) provides:

> (C) Disclosure otherwise prohibited by this rule of matters occurring before the grand jury may also be made—

> (i) when so directed by a court preliminary to or in connection with a judicial proceeding. . . .

Fed.R.Crim.P. 6(e)(3)(C)(i).

In order to resolve Slone–Stiver's pending Motion, the Court must determine, as a threshold matter, whether the documents and records that she seeks constitute "matters occurring before the grand jury." As set forth above, Rule 6(e) prohibits the disclosure of only such matters. Consequently, if the materials at issue fall outside the scope of the secrecy required by Rule 6(e), then Court need not determine whether the exception to non-disclosure provided by Rule 6(e)(3)(C)(i) applies herein. On the other hand, if the documents and records at issue do qualify as "matters occurring before the grand jury," then the Court must determine the applicability of the foregoing exception to the rule against non-disclosure.

In *In re Grand Jury Proceedings,* 851 F.2d 860 (6th Cir.1988), the Sixth Circuit expounded upon the meaning of the phrase "matters occurring before the grand jury." In so doing, the court set forth the following general rule:

> . . . [C]onfidential documentary information not otherwise public obtained by the grand jury by coercive means is presumed to be "matters occurring before the grand jury" just as much as testimony before the grand jury. The moving party may seek to rebut that presumption by showing that the information is public or was not obtained through coercive means or that dis-

---

9. Parenthetically, it is not at all clear to the Court that it has the ability to order most of the relief sought by Kossoff through his Motion for the Return of Property. It appears from his Memorandum herein that the personal property taken from his home was seized pursuant to a state search warrant. The property apparently was placed in the custody and control of the Clark County Prosecutor's Office after the seizure. As set forth more fully, *infra,* the United States does not appear to possess any of the seized materials, with the possible exception of Kossoff's unspecified "statements" and "financial records." In addition, although Kossoff contends that the seized materials were released into the joint custody of Slone–Stiver and his former counsel, Slone–Stiver denies possessing most of the items. (Doc. # 17 at 5). In any event, Slone–Stiver is not an officer, agent or represen-

tative of the United States. *See, e.g., In re Greene,* 980 F.2d 590, 597 (9th Cir.1992), quoting *In re Hughes Drilling Co.,* 75 B.R. 196, 197 (Bankr. W.D.Okla.1987) (" 'The trustee is a representative of the estate, not an officer, agent or instrumentality of the United States.' "); *Cromelin v. United States,* 177 F.2d 275, 277 (5th Cir.1949) (same). If the materials seized from Kossoff's home were seized by the state, and to the extent that those materials are not in the custody of the United States, the Court has serious questions about its ability to order any such property returned to Kossoff pursuant to Fed.R.Crim.P. 41(e), which generally "is not the appropriate vehicle for recovery of property in the control of state officials." *Miller v. Reno,* 208 F.3d 214 (6th Cir.2000) (unpublished), citing *Clymore v. United States,* 164 F.3d 569, 571 (10th Cir.1999).

closure would be otherwise available by civil discovery and would not reveal the nature, scope, or direction of the grand jury inquiry, but it must bear the burden of making that showing....

*Id.* at 866–867.

The Sixth Circuit has stressed that the foregoing rule applies to documents and records that are obtained by a grand jury through coercion (i.e., a grand jury subpoena), even though the documents may have been prepared by a company for ordinary business purposes. If the foregoing requirements are met, once such materials are obtained by a grand jury, they are presumptively "matters occurring before the grand jury." *Id.* at 866–867; *Federal Deposit Ins. Corp. v. Ernst & Whinney,* 921 F.2d 83, 86–87 (6th Cir.1990).

■ In the present case, Slone–Stiver insists that the various materials she seeks are not "matters occurring before a grand jury." Upon review, the Court finds this argument to be persuasive. As noted, *supra,* Slone–Stiver has requested four categories of grand jury materials [10]: (1) all documents obtained by the grand jury through its subpoena power; (2) all documents that were prepared before the empaneling of the grand jury and that were seized pursuant to the aforementioned search warrants; (3) all "public records or documents" in the possession of the grand jury; and (4) all documents voluntarily provided to the grand jury. On its face, this request seeks access to two types of materials that plainly do not qualify as "matters occurring before the grand jury." Those materials include "all public records or documents" held by the grand jury and all documents voluntarily provided to that body. Under the Sixth Circuit test set forth above, "otherwise public" documents and documents voluntarily provided to a grand jury *are not* entitled to a presumption that they constitute "matters occurring before the grand jury."

*In re Grand Jury Proceedings,* 851 F.2d at 866–867. Furthermore, given that it does not object to Slone–Stiver's request, the Government has presented no argument that such documents do qualify as "matters occurring before the grand jury." Consequently, under Sixth Circuit law, those documents and records are subject to being released to Slone–Stiver, as they are not subject to the grand jury secrecy rule.

The next issue is whether the remaining two categories of documents and records qualify as "matters occurring before the grand jury." Those materials include: (1) items obtained through grand jury subpoenas; and (2) the materials prepared before the empaneling of the grand jury and seized pursuant to the October 20, 1992, search warrants and turned over to the grand jury. At the request of the Court, the Government has filed, under seal, a list of the various grand jury materials in its possession. That list has been filed in Kossoff's related criminal case, CR–3–97–73, as an attachment to docket number 51. It indicates that the Government possesses more than 250 exhibits, the vast majority of which are assorted business documents and financial records.[11] Based upon the Government's brief description of those materials, some of them appear to be records of Tower Metal, for which Slone–Stiver serves as the bankruptcy trustee. Others appear to be business records of other entities or individuals. Still others appear that they might be personal records belonging to Broock or Kossoff. While some of the materials appear to have been obtained through search warrants, others were subpoenaed by the grand jury.

■ With respect to the items obtained through grand jury subpoenas, the Court concludes that those materials are presumed to be "matters occurring before the grand jury." Those documents and records constitute "confidential documentary information

---

10. Herein, the Court uses the phrase "grand jury materials" in the generic sense to mean those materials presented to the grand jury and currently held by the United States. The Court's use of that phrase does not mean that the materials necessarily constitute "matters occurring before the grand jury," an issue that will be resolved, *infra.*

11. The list also indicates that the Government's materials include grand jury testimony and interview memoranda. Slone–Stiver does not seek to obtain these materials.

not otherwise public obtained by the grand jury by coercive means...." *In re Grand Jury Proceedings,* 851 F.2d at 866. Nevertheless, the Court finds that the subpoenaed grand jury materials are subject to disclosure because Slone–Stiver has overcome the presumption. As set forth above, the moving party may rebut the presumption that materials are "matters occurring before the grand jury" by showing that "disclosure would be otherwise available by civil discovery and would not reveal the nature, scope or direction of the grand jury inquiry...." *Id.* at 867.[12]

In the present case, Slone–Stiver has represented to the Court that she otherwise could obtain the documents and records at issue through discovery, if the grand jury had not subpoenaed the only existing copies of such materials. (Doc. # 2 at 7–8). In its Memorandum, the Government does not deny this assertion, and it makes no argument to the contrary. (Doc. # 15). Furthermore, based on the Court's review of the Government's list of grand jury materials, it does appear that the various third-party documents and records sought by Slone–Stiver would be otherwise available to her through discovery, if said materials had not been subpoenaed by the grand jury.[13]

Regarding the second part of Slone–Stiver's burden, it does not appear to the Court that disclosure of the subpoenaed materials would "reveal the nature, scope, or direction of the grand jury inquiry." Slone–Stiver does not seek access to any materials created by or for the grand jury. Nor does she seek access to transcripts of grand jury testimony or any deliberative materials. Rather, she seeks to obtain documents and business records that were prepared prior to the empaneling of the grand jury. Upon reviewing the Government's list of grand jury materials, the Court finds no danger that releasing such materials to Slone–Stiver would reveal the nature, scope, or direction of the grand jury's now-completed inquiry, and the Government advances no such argument. Consequently, the Court concludes that the materials subpoenaed by the grand jury do not constitute "matters occurring before the grand jury," as Slone–Stiver has rebutted the presumption to the contrary. Therefore, those materials are subject to being released to her.

■ With respect to the final category of materials—the documents and records seized pursuant to search warrants, prepared before the empaneling of the grand jury—it is

---

**12.** In *Federal Deposit Ins. Corp. v. Ernst & Whinney,* 921 F.2d 83, 87 (6th Cir.1990), the court paraphrased the test that it previously had articulated in *In re Grand Jury Proceedings,* 851 F.2d at 867. In so doing, the *Ernst & Whinney* court stated that a movant could rebut the presumption of non-disclosure by showing that grand jury documents were "public or were not obtained by coercive means or that discovery would *not* otherwise be available by civil discovery and would not reveal the nature, scope, or direction of the grand jury inquiry." (Emphasis added). As set forth in *In re Grand Jury Proceedings,* however, the test is whether the materials *would* otherwise be available through discovery. The *Ernst & Whinney* court provided no explanation for its insertion of the word "not," and such addition appears to have been inadvertent, given that the court did not purport to modify the standards set forth in *In re Grand Jury Proceedings.*

**13.** It could be argued that the grand jury materials are not "otherwise available by civil discovery" because the grand jury obtained the only existing copies. Under such an interpretation of the phrase "otherwise available," however, the secrecy of grand jury materials would turn upon whether the grand jury seized one of many copies or the only existing copy, and not upon the substance of the materials at issue. The Court discerns no principled reason for making such a distinction. Rather, the Court construes the phrase "otherwise available by civil discovery" to refer to the nature and content of the materials at issue rather than the number of copies in existence. *See United States v. Alpha Medical Management, Inc.,* 116 F.3d 1481 (6th Cir.1997) ("Although these items are documents prepared in the regular course of business, the initial presumption is that they are matters occurring before the grand jury.... The IRS may rebut that presumption by showing 'that discovery would be otherwise available' ... As discussed above, the IRS would be entitled to the information it seeks if the documents were not in the possession of the grand jury.... Therefore, to the extent the summons seeks information needed by the IRS to conduct the audit, the district court did not abuse its discretion in determining that the information sought in the summons is not protected from disclosure by Rule 6(e)."); *In re Grand Jury Proceedings,* 851 F.2d 860, 865–867 (6th Cir.1988) (recognizing that a document may qualify as "otherwise available by civil discovery" even when a grand jury holds the sole existing copy).

not at all clear that such materials are entitled to a presumption that they qualify as "matters occurring before the grand jury." In *In re Grand Jury Proceedings,* 851 F.2d at 866, the Sixth Circuit held that the presumption applies to certain materials "obtained by the grand jury by coercive means...." As the Sixth Circuit recognized, materials obtained through a grand jury subpoena plainly come under this rule. In the present case, however, the search warrant materials were obtained not by the grand jury by coercive means, but by law enforcement authorities by coercive means (i.e., through the execution of search warrants). It is not apparent from the record that the grand jury played any role in the decision to obtain or to execute the search warrants. If the search warrants were executed as part of an independent law enforcement investigation, wholly apart from the grand jury investigation, it certainly could be argued that the search warrant materials were not obtained "by the grand jury by coercive means." This is particularly true if the law enforcement officials obtained the materials through their independent investigation and thereafter voluntarily provided the information to the grand jury. Cf. *In re Grand Jury Subpoena,* 920 F.2d 235, 241–242 (4th Cir.1990) (holding that materials obtained by search warrants are not "matters occurring before a grand jury," when the materials are obtained as part of an independent law enforcement investigation conducted while a separate grand jury investigation takes place).[14] Unfortunately, the parties have not addressed this issue, and the Court has found no Sixth Circuit case law on point.

In any event, the Court need not dwell on the foregoing issue. Even if the materials seized pursuant to law enforcement search warrants are entitled to a presumption that they qualify as "matters occurring before the grand jury," Slone–Stiver has rebutted the presumption. As with the materials subpoenaed by the grand jury, it appears that the materials obtained by search warrant[15] would be otherwise discoverable, if the grand jury had not obtained the only available copies of such records.[16] Furthermore, as with the subpoenaed materials, the Court discerns no danger that the nature, scope or direction of the now-completed grand jury investigation would be revealed if Slone–Stiver obtains the search warrant materials. Therefore, the Court concludes that the search warrant materials do not constitute "matters occurring before the grand jury" and, therefore, that they are subject to being released to Slone–Stiver.

■ Finally, even if any of the subpoenaed materials or search warrant materials do qualify as "matters occurring before the grand jury," the Court finds applicable the exception to non-disclosure provided by Fed. R.Crim.P. 6(e)(3)(C)(i). As set forth, *supra,* that provision allows the disclosure of "matters occurring before the grand jury" "when so directed by a court preliminary to or in connection with a judicial proceeding." The Sixth Circuit has recognized that "[a] private party seeking disclosure of grand jury material pursuant to Fed.R.Crim.P. 6(e)(3)(C)(i) has the burden of showing a compelling necessity for that material—that is, (a) the material sought will prevent a possible injus-

14. The Court recognizes that the persuasive value of the Fourth Circuit's ruling in *In re Grand Jury Subpoena* is limited, given that the circuit courts have adopted varying interpretations of the phrase "matters occurring before the grand jury." The Court has located no Sixth Circuit case law, however, discussing the issue of whether materials obtained through an independent law enforcement investigation, and later turned over to the grand jury, qualify as "matters occurring before the grand jury." As set forth above, however, such materials fall outside the precise definition of "matters occurring before the grand jury" provided by the Sixth Circuit in *In re Grand Jury Proceedings,* 851 F.2d at 866–867.

15. It is not entirely clear from the list provided by the Government which grand jury materials were obtained through subpoenas and which materials were obtained as a result of the search warrants. For purposes of the Court's analysis herein, however, the distinction is immaterial, as it appears that all of the documents and records would be otherwise available through civil discovery, regardless of the manner in which the grand jury obtained them.

16. Once again, the Court notes that the Government does not dispute Slone–Stiver's assertion that the grand jury obtained the original documents or the only available copies.

tice, (b) the need for disclosure outweighs the need for secrecy, and (c) the request is narrowly tailored to provide only material so needed." *Ernst & Whinney*, 921 F.2d at 86.

■ In the present case, the Court concludes that Slone–Stiver has met the foregoing burden. *First,* the material sought will prevent a possible injustice because Slone–Stiver has represented to the Court, and it has not been disputed, that she has no other way of obtaining the materials, given that the grand jury apparently has the originals or the only available copies of the documents and records at issue. Furthermore, Slone–Stiver has represented to the Court, and it has not been disputed, that her inability to obtain the materials will prejudice her pursuit of adversary proceedings against NE Alloys and Steelmet. *Second,* the Court has no difficulty concluding that Slone–Stiver's need for disclosure outweighs the need for secrecy. As set forth above, the grand jury proceedings and the resulting criminal prosecutions have been completed, and Slone–Stiver needs the materials to pursue the pending adversary proceedings. *Third,* Slone–Stiver's request is narrowly tailored. She seeks only search warrant materials and subpoenaed documents and business records that were created prior to the empaneling of the grand jury. She does not seek transcripts of grand jury testimony, or materials created by or for the grand jury. Upon review, the Court concludes that her request is narrowly tailored to her pursuit of the pending bankruptcy proceedings. Consequently, the Court finds the subpoenaed grand jury materials and search warrant materials subject to disclosure under Fed.R.Crim.P. 6(e)(3)(C)(i), even if some of them were to constitute "matters occurring before the grand jury." [17]

Having determined that Slone–Stiver has met the legal requirements for obtaining the grand jury materials at issue, the Court next must consider whether Kossoff has a superior legal right to recover any of those materials, some of which may have been seized from his home.[18] As set forth above, the Court must consider this issue because Kossoff has filed a Motion for the Return of Property, pursuant to Fed.R.Crim.P. 41(e), in the related criminal action, case number CR–3–97–73.[19]

■ In *United States v. LaFatch*, 565 F.2d 81, 83 (6th Cir.1977), the court recognized that "[c]onflicting claims of ownership between the defendant from whom property

**17.** In his Memorandum, Kossoff argues, in conclusory fashion, that "[t]he trustee's request for the Grand Jury material seems to be couched in terms of a more expensive, burdensome, or time consuming presentation of a civil case without the material." (Doc. # 21 at 6). According to Kossoff, these reasons for seeking grand jury materials do not establish "a 'particularized need' or an inability to present important relevant material to the trier of fact absent access to the Grand Jury materials.' " (*Id.*). Although the Court does not dispute Kossoff's statement of law, Slone–Stiver plainly makes no such argument, and she *is not* seeking the grand jury materials simply to ease the burden or expense of presenting her case. To the contrary, she has represented to the Court that she needs the grand jury materials because no other copies of those documents and records exist, and because she will be severely hampered in her ability to pursue the pending adversarial proceedings without such materials.

**18.** The origin of the various grand jury materials in the Government's possession is not clear. In his Motion for the Return of Property, which has been filed in the related criminal action, Kossoff contends that certain records and documents were seized from his home pursuant to a search warrant. Consequently, it is possible that some of the grand jury materials are his personal property. As the Court has explained, *supra,* however, it appears that the United States *does not* possess most of the items sought by Kossoff in his Motion for the Return of Property. Based upon its review of the record, however, the Court cannot say with certainty that the grand jury materials in the Government's possession do not include any documents or records that were seized from his home.

**19.** The existence of Fed.R.Crim.P. 6(e) and Fed. R.Crim.P. 41(e) creates some tension in the present case. As set forth above, Slone–Stiver seeks to obtain certain materials in the possession of the grand jury, pursuant to Rule 6(e), which authorizes disclosure of those materials under certain circumstances. On the other hand, some of the grand jury documents and records may have been seized from Kossoff's home, pursuant to a search warrant. In accordance with Rule 41(e), he seeks to have those materials returned to him, given that the Government has completed its criminal prosecution. As a result, Slone–Stiver and Kossoff may well seek custody of some of the same documents and records. In its analysis, *infra,* the Court will attempt to accommodate these seemingly competing interests.

was seized and another claimant create a dilemma for a district court." The general rule, however, "is that seized property, other than contraband, should be returned to its rightful owner once the criminal proceedings have terminated."[20] *United States v. Hess,* 982 F.2d 181, 186 (6th Cir.1992), quoting *LaFatch,* 565 F.2d at 83; *see also Sovereign News Co. v. United States,* 690 F.2d 569 (6th Cir.1982) (reasoning that when a former criminal defendant can show a property interest in seized materials, the Government must return them to him); *United States v. Mills,* 991 F.2d 609, 612 (9th Cir.1993) (noting that once the property at issue is no longer needed as evidence, "[a] criminal defendant is presumed to have the right to the return of his property"). Indeed, the Sixth Circuit has recognized that " '[a] district court has both the jurisdiction and the duty to return the contested property "once the government's need for it has ended." ' " *Hess,* 982 F.2d at 187, quoting *United States v. Martinson,* 809 F.2d 1364, 1370 (9th Cir. 1987).

In *Hess,* the Sixth Circuit recognized the difficulties that arise when a bankruptcy trustee and a third-party assert a right to possess records seized by law enforcement officials during a criminal investigation. In that case, Black River Petroleum, Inc. ("Black River"), sought the return of business documents that had been seized during a search of its premises. The Government had seized the documents, pursuant to a search warrant, as part of a criminal investigation into the alleged bank and bankruptcy fraud of defendants Homer Hess and others. Following the criminal case, Black River filed a motion in the district court, seeking the return of all property seized during the search. In response, Kathryn Belfance, a bankruptcy trustee for Hess and two of his business entities, filed a memorandum, asserting that she was entitled to receive the

Black River documents. In support, she reasoned that Black River was an alter ego of Hess and, therefore, that she, as Hess' bankruptcy trustee, was entitled to the documents, which she believed were part of the bankruptcy estate. The district court agreed and ordered the Black River documents to be turned over to Belfance, without conducting an evidentiary hearing and without allowing the company to respond to her argument.

Upon review, the Sixth Circuit noted the district court's failure to conduct an evidentiary hearing, despite the fact that both Belfance and Black River had asserted a right to custody of the documents at issue. *Hess,* 982 F.2d at 186.[21] The court also recognized the possibility that the documents could have remained in the custody of the Government. *Id.* In light of these competing claims to the documents, the Sixth Circuit concluded that the district court should have considered the legal issues raised by the parties and should have conducted an evidentiary hearing to resolve any disputed issues of fact. *Id.*

The present case is distinguishable from *Hess,* however, insofar as Kossoff's primary concern appears to be obtaining the return of the various personal items that were seized from his home, including currency and coins, gold and silver ingots, checks, jewelry, savings bonds, assorted stocks and insurance policies, safe-deposit box keys, bank books and statements, a ledger, assorted financial records and two car titles. Notably, most of these items, which are the subject of his Motion for the Return of Property in case number CR–3–97–73, are not among the grand jury materials currently in the possession of the United States.[22]

As noted, *supra,* at the request of the Court, the Government has filed, under seal, a list of the grand jury materials in its possession. That list has been filed in Kossoff's related criminal case, CR–3–97–73, as

---

**20.** This "general rule" does not apply when the Government has a "continuing interest" in the property at issue. *Sovereign News Co. v. United States,* 690 F.2d 569, 577 (6th Cir.1982). A "continuing interest" may include, *inter alia,* a criminal or tax investigation in progress. *Id.*

**21.** In fact, the Sixth Circuit noted that Black River had filed its motion under Rule 41(e),

which "clearly contemplates a hearing 'on any issue of fact necessary to the decision on the motion.' " *Hess,* 982 F.2d at 186.

**22.** As set forth above, although Kossoff questions the location of these items, the Court need not resolve that issue in order to rule upon Slone–Stiver's pending Motion.

an attachment to docket number 51. It indicates that the Government possesses numerous exhibits, the vast majority of which are documents and financial records. Although the Court cannot say so with certainty, it appears that some of those materials might be personal records belonging to Broock or to Kossoff.[23] *If* the various materials held by the Government include the "statements" or "assorted financial records" seized from Kossoff's home and referenced in his Motion for the Return of Property, then the present case is analogous to *Hess,* insofar as Slone–Stiver is seeking possession of property rightfully owned by Kossoff.[24] To the extent that the Government holds grand jury materials that do not belong to Kossoff, however, the present case is distinguishable from *Hess,* as Kossoff can have no legitimate claim to custody of materials owned by others. In fact, insofar as the Government holds records seized from Tower Metal, those materials are property of the bankruptcy estate and, therefore, would fall under the control of Slone–Stiver. Unfortunately, however, the Court cannot discern the ownership or origin of the various grand jury materials based on the list provided by the Government. The Court sees no reason, however, why the parties could not review the materials, along with Kossoff, to determine whether he is entitled to the return of any of the grand jury materials currently in the possession of the United States.

Once the ownership issues are resolved, it appears to the Court, based upon the legal authority set forth above, that Slone–Stiver, as bankruptcy trustee, will be entitled to custody of any grand jury materials that were seized from, and belong to, Tower Metal, the debtor. Given that the criminal proceedings against Kossoff have concluded, it appears that he will be entitled to recover, pursuant to his pending Motion for the Return of Property in case number CR–3–97–73, any grand jury materials that belong to him personally, and that were seized from him, pursuant to the October 20, 1992, search warrants.[25] In reaching this conclusion, the Court relies upon the aforementioned general rule that " 'seized property, other than contraband, should be returned to its rightful owner once the criminal proceedings have terminated.' " *Hess,* 982 F.2d at 186, quoting *LaFatch,* 565 F.2d at 83.[26] Given that Slone–Stiver also has a right to obtain the materials in the possession of the grand jury, however, the Court will permit her to obtain copies of any documents and records that might be ordered returned from the Government to Kossoff. SUCH COPIES MUST BE PROVIDED TO SLONE–STIVER BEFORE ANY GRAND JURY MATERIALS ARE RELEASED TO KOSSOFF.

**23.** The list provided by the Government does not indicate that the United States holds any of the other items mentioned by Kossoff in his Motion for the Return of Property.

**24.** Parenthetically, the Sixth Circuit's decision in *Hess* does not make clear whether the property at issue had been presented to a grand jury after being seized by the Government.

**25.** This does not include any materials that are the property of Tower Metal. As set forth, *supra,* Slone–Stiver is entitled to the possession of any materials that are the property of the bankruptcy estate. Consequently, Kossoff is not entitled to the return of any materials that belong to Tower Metal.

**26.** Although the Sixth Circuit has recognized an exception to this general rule when the United States demonstrates that it has a "continuing interest" in the property, the pendency of the Tower Metal bankruptcy proceedings does not qualify as such an interest. The bankruptcy trustee is an officer of the Court and a representative of the Tower Metal estate, but she is not an officer, agent or instrumentality of the United States. *In re Greene,* 980 F.2d 590, 597 (9th Cir.1992), quoting *In re Hughes Drilling Co.,* 75 B.R. 196, 197 (Bankr.W.D.Okla.1987) (" 'The trustee is a representative of the estate, not an officer, agent or instrumentality of the United States.' "); *Cromelin v. United States,* 177 F.2d 275, 277 (5th Cir.1949) ("The trustee, like a receiver, is an officer of court, appointed by the court, directed by the court, and paid by the court from the funds in the court. He is in no sense an agent or employee or officer of the United States."); *Allnutt v. United States Dept. of Justice,* 99 F.Supp.2d 673 (D.Md.2000) ("Trustees of bankruptcy estates are 'private trustees.' *See* 28 U.S.C. § 586(a)(1). They are not employees of the U.S. Trustee or the Department of Justice. . . . Nor are they agents of the U.S. Trustee or the federal government."). Consequently, Slone–Stiver's interest in the grand jury materials does not qualify as a "continuing interest" of the Government.

With respect to the grand jury materials that were obtained from, and thus are the property of, individuals or entities other than Tower Metal or Kossoff, the Court concludes that Slone–Stiver will be permitted to obtain such materials, in accordance with the analysis of Fed.R.Crim.P. 6(e) set forth, *supra*. The Court also recognizes the possibility, however, that the individuals or entities from whom those grand jury materials were obtained may seek to have them returned at some point in the future, pursuant to Rule 41(e), just as Kossoff has done.[27] Consequently, the Court will permit Slone–Stiver to obtain copies of the grand jury materials that she seeks from these third-parties, with the Government retaining the actual materials currently in its possession.

Finally, with respect to the request by NE Alloys, Steelmet and Kossoff to have direct and equal access to any grand jury materials obtained by Slone–Stiver, the Court finds said request to be well taken. In her Memorandum, Slone–Stiver argues that the documents and records at issue are vital to her pursuit of the pending adversarial proceedings. If that is true, then the materials are also vital to the defense of her adversaries, NE Alloys, Steelmet and Kossoff.[28] Although the Court presumably could require NE Alloys, Steelmet and Kossoff to seek such materials through the formal discovery process, it discerns no useful purpose in doing so.[29]

Based on the foregoing reasoning and citation of authority, representatives of Slone–Stiver and the Government are directed to meet jointly with Kossoff, within 20 days from date, to determine which items of property in the Government's possession belong to whom, and to distribute the same, based on the principles set forth herein. As set forth above, Slone–Stiver should be provided with copies of any materials that are returned to Kossoff.

Counsel listed below will take note that a telephone conference call has been set for Wednesday, August 30, 2000, at 5:00 p.m., to verify that the materials currently in the possession of the Government have been returned to their rightful owners, in accordance with the reasoning contained herein, and to set a date for a hearing on this issue, *if* an agreement upon the ownership of said materials has not been reached. The Court assumes that counsel Paul Shaneyfelt will participate in the conference call in lieu of attorney John Rieser.

The captioned cause, which was administratively processed on September 22, 1998 (Doc. # 8), is hereby reactivated on the docket of this Court.

---

**27.** Kossoff's request for the return of his seized personal property has no impact on the Government's continued possession of the property seized or obtained from other individuals or entities. If those other individuals or entities wish to recover property taken from them, they must file their own motions, pursuant to Fed.R.Crim.P. 41(e). *United States v. Payden*, 613 F.Supp. 800, 815 n. 12 (S.D.N.Y.1985).

**28.** In his Memorandum, Kossoff represents to the Court that he is also the target of adversarial proceedings initiated by Slone–Stiver, who does not suggest otherwise. (Doc. # 21 at 6).

**29.** In reaching this conclusion, the Court notes that it could simply construe these requests for direct and equal access as additional motions for disclosure of the grand jury materials and provide said materials to NE Alloys, Steelmet and Kossoff, pursuant to Rule 6(e), on the same basis that Slone–Stiver is entitled to them. In any event, granting NE Alloys, Steelmet and Kossoff direct and equal access to materials released to Slone–Stiver is consistent with the Court's conclusion, *supra*, that Slone–Stiver should be permitted to copy any documents and records in the possession of the Government that are ordered returned to Kossoff.